OSCAR BARNET et al., surviving executors &c.,

*v.*

AMELIA BARNET et al.

A testator gave to his wife for life the interest of certain moneys and also the interest of some contingent funds, if those funds should become part of his estate. The wife died before the testator, and the contingent funds did not fall into his estate until after his own death.

*Held,* that they should pass under the residuary clause for the benefit of testator's two sisters, to whom he had given for life the interest of " two equal shares of the remainder of my property," and that the principal thereof should ultimately go to those to whom he gave his sisters' shares after their death, and not to those to whom he gave the shares of " moneys apportioned to my wife " after her death.

---

Bill for construction of will and directions as to distribution of assets.

*Mr. C. F. Hill,* for complainants.

THE CHANCELLOR.

John Barnet, late of the city of Newark, deceased, by his will provided, first, that his debts and funeral expenses be paid.  Second, that his wife should occupy his homestead with the furniture (which latter he gave to her absolutely) for life, or so long as should be agreeable to her.  Third, that she should have the interest for life of $15,000 out of a mortgage of $35,000 which he held.  Fourth, that his executors should put at interest a sum sufficient to raise $500 a year, and pay the interest to his brother, William G. Barnet, for life ; and he also directed them to pay to his sisters, Amelia Barnet and Margaret Turnbull, the interest of " two equal shares " of the " remainder of" his " property " for their lives ; and also directed that if the former should not survive him, the share which would have been hers had she outlived him, be divided among the heirs-at-law of his sister, Mary Hill, and of his deceased brother, Stephen D. Barnet; and that in case Margaret Turnbull should not survive him, the share which would have been hers had see outlived him, be equally divided among certain children of hers, whom he named, viz., Mary E. Dawes, Sarah E. Stewart, and James D. Turnbull ; and that in case both Amelia Barnet and Margaret Turnbull should survive him, their shares after their decease be paid as provided in case they should predecease him.  The fifth section states that he held two lots of land on Mechanic street, in Newark, belonging to William Compton, to secure the payment of certain moneys which the latter owed him, and he directed his executors, if Compton should redeem the property, to convey it to him ; and he also directed, that if Compton should pay the money to him before his death, or to his executors after that time, the executors should pay his wife the interest of $5,000 for life.  By the sixth section he provided that after his wife's death the " shares of money apportioned to her as " therein " above," be divided by his executors as follows : they were to set apart and invest a sum sufficient to produce $500 a year interest, and out of the $500 pay to his sisters-in-law, Ellen and Nancy Barnet, $250 apiece yearly for life ; to pay his nephew, Alexander Turnbull, $1,000 and divide the remainder between nieces and a

nephew of his, whom he named, viz., Mary E. Dawes, Sarah E. Stewart, Jane H. Wheeler and James D. Turnbull. By the seventh section he stated that the land on which what was his homestead dwelling stands belonged to his wife, but that the house was built with his money; that he desired that his wife should occupy and enjoy the property for life; but in case she should sell it, as she might do at any time, that then in accordance with an understanding between them, she should take a mortgage to his executors upon the premises for $8,000 of the purchase-money, and they should pay her the interest of the mortgage for life, and after her death collect the money and divide it equally among his " heirs-at-law respectively mentioned in the preceding articles or sections" of the will. By the eighth section he provided that in case his wife should die before his death, the "moneys apportioned" to her as therein aforesaid should be divided in exactly the same manner as they would have been had she survived him.

By a codicil he revoked the gift of $500 a year to his brother William and the bequest of $250 a year to his sister-in-law, Nancy Barnet (William's wife), and directed his executors not to set aside any money for the production of those annuities, but to proceed in the execution of the will as if those provisions in behalf of those two legatees were not therein. He then requested his sister Amelia to pay out of the income bequeathed to her a sum not exceeding $100 a year to William for his life, if she should live so long.

The testator's wife predeceased him and devised to him the homestead property. He sold it for $13,000, and took a mortgage for $10,000 of the price. After his death the purchaser became bankrupt, and the executors bought the equity of redemption of his assignee in bankruptcy, and they now own the property as part of the estate.

Compton did not redeem his property, and the executors foreclosed the mortgage, and the premises were sold under the foreclosure.

The bill is filed by the surviving executors for a construction of the will and directions as to the distribution of the property.

The scheme of the will is to make provision for the testator's wife for life and to give the residue of the estate, not including the moneys of which she was to have the interest, to the testator's two sisters, Amelia Barnet and Margaret Turnbull, for life, with remainder to certain persons whom the testator names, and with substitution of those persons in case the primary legatees should predecease the testator. The principal of the moneys of which the testator's wife was to have the interest was to go as provided in the sixth section.

By the second section the testator gives to his wife the use of the homestead for life (the land was hers), and gives to her the household furniture absolutely. He then, by the third, gives her the use of $15,000 for life. He next, by the fourth, gives his brother William an annuity of $500 for life (but by the codicil revokes the gift), and gives to his sisters, Amelia Barnet and Margaret Turnbull, the interest of "two equal shares of the remainder of" his "property" for life (by which he means to give them the interest of the whole of the residue in equal shares), and provides that if the former should predecease him her share shall go to certain persons to whom he refers as the "heirs-at-law" of his sister Mary, and those of his deceased brother Stephen; and that in case Margaret should predecease him her share shall go to certain children of hers, whom he names. He also provides that in case both should survive him, their shares respectively, at their respective deaths, shall go in like manner to the same persons respectively. By these provisions he supposed that he had disposed of all his property except the principal of the funds set apart for his wife. Among his assets was real property, which he held by way of mortgage as security for a debt due to him from William Compton. He contemplated the payment of that debt by the mortgagor either in his, the testator's, lifetime, or after his death, and provided (for his wife's benefit) that in case of redemption $5,000 of the money should be put out at interest and she have the interest for life. He appears to have had an agreement with her that in case she should sell the homestead she would give his estate $8,000 of the

purchase-money after her death; she to have the interest of it in the meantime.

It was, also, a part of the scheme of the will that after the death of the testator's wife, the moneys of which she was to have the interest should go as follows: there was to be an investment of a sum sufficient to raise an annuity of $250 for Ellen Barnet, for life (the will provided for a like annuity for Nancy Barnet, but it was revoked by the codicil), $1,000 to go to Alexander Turnbull, and the rest to be divided among nieces and a nephew of his, whom he names, children of his sister Margaret. And the same disposition was to be made of the same moneys, at his death, in case his wife should predecease him. Whether the fund of $5,000 and that of $8,000 would ever be raised or not, depended on contingencies. As to the former, it was dependent on the redemption of the Compton property, and the latter was dependent on the sale of the homestead by the testator's wife. Those funds were never raised. Compton did not redeem and the homestead was not sold by the testator's wife. The gift to her out of the redemption-money of the former, never took effect. Nor did the provision as to the $8,000. That was, in fact, not a gift to her, but was a provision by her in a certain contingency (which never happened) for the benefit of the testator's estate. Those properties are not embraced in the term "moneys apportioned to my wife" in the eighth section of the will, and are not affected by the provision in that section. Both the homestead and the Compton property pass under the residuary gifts in the fourth section. The principal of the sum to be invested to raise an annuity of $250 for Ellen Barnet for life, passes to the residuary legatees named in the eighth section.

Speaking generally, and taking the will and codicil together, and restating the scheme, the testator intended to provide a fund for his wife's support, to be increased in certain contingencies which never happened, and to give to his sisters Amelia and Margaret the benefit for life of all the residue of his estate, with substitution of his sister Mary's and deceased brother Stephen's children in Amelia's place, in case she should die before him, and

of certain children of Margaret, viz., Mrs. Dawes, Mrs. Stewart and James D. Turnbull, in her place, if she should predecease him, and with remainder in each case to the same persons respectively; and to give the funds of which his wife was to have the interest, after his death if she should survive him, or directly if she should predecease him, to the persons named in the eighth section; that is, to Ellen Barnet a life annuity of $250 thereout; to his nephew, Alexander Turnbull, $1,000, and the residue, including the principal of the fund to raise the annuity of $250, to Mrs. Dawes, Mrs. Stewart and Mrs. Wheeler and James D. Turnbull. The provisions in regard to the Compton property and the homestead were each wholly upon contingency, and intended for the benefit of his wife.